DALE v. SMITH et al.

(Circuit Court, W. D. Missouri, W. D.   November 3, 1910.)

(No. 3,571.)

1. REMOVAL OF CAUSES (§ 19*)—GROUNDS OF REMOVAL—"FEDERAL QUESTION"—ACTION AGAINST FEDERAL COURT RECEIVERS.

That defendants are receivers of a railroad company appointed by a federal court does not make a suit against them one involving a federal question within the removal act (Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]).

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 48; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 3, p. 2705.

Actions against federal receivers, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

2. COURTS (§ 501*)—RECEIVERS IN FEDERAL COURT—ACTION IN STATE COURT—EFFECT.

Where an interstate railroad company has been placed in the hands of receivers by a federal court, its operation and its ability to perform its duties to the public are in no manner affected or interfered with by the institution and maintenance of suits against the receivers in a state

court, the effect of which is only to liquidate the claims; judgments recovered against the receivers, if any, being payable through the receivership proceedings in the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1409; Dec. Dig. § 501.*]

3. REMOVAL OF CAUSES (§ 19*)—INTERSTATE RAILROADS—RECEIVERS—FEDERAL QUESTIONS.

Where receivers of an interstate railroad were appointed by a federal court, actions against them instituted by claimants in a state court were not removable to the federal court as involving a federal question on the theory that to permit such suits to be maintained in the state court would interfere with the receivers' operation of the road and their performance of its duties to the public.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 48; Dec. Dig. § 19.*]

4. REMOVAL OF CAUSES (§ 86*)—GROUNDS—PETITION.

A removal petition merely alleging that the cause was one arising under the laws of the United States was insufficient for failure to state the facts from which the court might see that such was the fact.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 132; Dec. Dig. § 86.*]

At Law. Action by Harry C. Dale against Charles H. F. Smith and others, as receivers of the Chicago Great Western Railway Company. On plea to the jurisdiction and motion by plaintiff to remand the cause to the state court. Sustained, and motion granted.

E. R. Morrison, for plaintiff.
Frank Hagerman and Kimbrough Stone, for defendants.

VAN VALKENBURGH, District Judge. This is a plea to the jurisdiction and motion to remand the above entitled cause to the circuit court of Jackson county, Mo. The defendants are the receivers of the Chicago, Great Western Railway Company, appointed by the Circuit Court of the United States of the Eighth Judicial Circuit for the District of Minnesota, Third Division, and later in ancillary proceedings by the Circuit Court of this district. The petition for removal states: (1) That the defendants are duly qualified and acting receivers of the Chicago Great Western Railway Company under orders of appointment by the courts above named; (2) that the matter in dispute exceeds $2,000; (3) that this suit involves a controversy wholly and entirely between said receivers as residents and citizens of the state of Minnesota, and the plaintiff as a resident and citizen of the state of Missouri; (4) that this case is one arising under the laws of the United States. It being now conceded that the plaintiff is a resident and citizen of the state of Kansas, and that the defendants are citizens and residents of the state of Minnesota, the defendants rely upon the fourth specification in their petition for removal, namely, "that this case is one arising under the laws of the United States."

In their memorandum on the plea and motion defendants state that their contention that a federal question is involved in this controversy

rests upon the objects desired to be attained by the bill of complaint and the order in the ancillary proceedings in which defendants were appointed by the Circuit Court of this district. It is not the contention of the defendants that the sole fact that they are receivers appointed by a United States court makes a suit against them one involving a federal question within the meaning of the removal statute, but defendants say that:

"The bill of complaint and the order appointing these receivers reveals objects broader than the mere preservation of the property of the railway company for its creditors and stockholders, objects which are peculiarly federal in their nature, namely, the preservation and protection of an interstate common carrier for the benefit of the public engaged in interstate business, and for the protection and preservation of the carriage by that carrier of the United States mail."

Attention is then called to provisions of the bill setting forth its objects to be "the maintenance and operation of said railway and the preservation of its value, and the performance of its public duties as a common carrier." Another portion of the bill described as "reaching the heart of this contention" is then set out as follows:

"That the said railway and property as now held, controlled, and operated consists of a large railway system and an important trunk line of railway between the cities of Chicago, St. Paul, and Minneapolis, Omaha and Council Bluffs, Des Moines, St. Joseph, Leavenworth, and Kansas City, Mo., and is an important line of railway to the country tributary to said lines of railway, and that one of the most important ingredients of the value of said property is to maintain it as a single system of railway and in full and complete operation. That to stop or cripple the operation of said line of railway, or to sever its said lines so owned, leased, and controlled would result in a ruinous sacrifice to the stockholders and creditors, including your orators, and would also deprive the public of the use of said line of railway. That unless this court, in view of the impending and inevitable defaults, as aforesaid, will deal with the property as a single trust, and take it into judicial custody for the protection of every interest therein, the individual holders of said obligations, creditors of said Great Western Company, will assert their remedies in different courts in the said several states through which said lines of railroad run, and in which its said property is situated. That, under and by virtue of the laws of said states, judgments will be rendered against the said Great Western Company, executions will be levied upon its equipment and other property so necessary to the maintenance and operation of said lines of railway, and which is necessary to the preservation of the value of said property and to the accommodation of the public, the said property will be taken into the custody of the various officers and courts of the various states and the railroad deprived of the use thereof. That the same will prevent the Great Western Company from discharging its duties as a common carrier and in the transportation of the mails, and that interstate commerce will be thereby interfered with and the said company unable to perform its public duties. That communication between many cities, towns, and places, which are wholly dependent upon said railroads, will be interfered with and interrupted. That serious and irreparable injury will thereby be done to the trade and commerce between the various states, cities, and towns aforesaid. That a vast and unnecessary multiplicity of suits will result, and most important and valuable property will be dismantled and destroyed. Your orators allege that unless such course is pursued, to wit, the taking of said property into judicial custody, said property will be dismantled, dissipated, and dismembered, its earning capacity destroyed, and vast sums of money will be lost to the various creditors and stockholders of said Great Western Company, and the public interest seriously affected."

The attention of the court is then directed to the following language incorporated into the order appointing the ancillary receivers:

"That for all liabilities incurred by said receivers in the operation of the railroads or any of them of the property hereby placed in their charge each claimant may file an intervening petition in this cause, and have his demand adjudicated in this court thereon."

Plaintiff attacks the position of defendants upon the following grounds: (1) It being conceded that the requisite diversity of citizenship does not exist, and that the mere fact that the defendants are receivers appointed by a United States court does not make this a case arising under the laws of the United States, then this question cannot be determined by allegations in an ancillary bill. Jurisdictional questions must be determined by reference to the original suit in which the receivers were appointed. (2) That, unless the court acts, the railroad company will be prevented from discharging its duties as a common carrier in the transportation of the mails, and that interstate commerce will be interfered with, do not present a ground of federal jurisdiction; the Attorney General of the United States being no party to the suit. (3) That the allegation in the petition for removal under which it is sought to show that a federal question is involved states a mere legal conclusion, and does not allege facts from which the court may determine whether the laws or Constitution are involved.

It is now well settled that the mere fact that the defendants are receivers appointed by a United States court does not make a suit against them one involving a federal question within the meaning of the removal statutes (Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]). Gableman v. Peoria Electric Railway Co., 179 U. S. 335, 21 Sup. Ct. 171, 45 L. Ed. 220. But the defendants argue that the objects disclosed by the ancillary bill of complaint and the order appointing these receivers thereunder are peculiarly federal in their nature and necessarily involve a federal question. In support of his contention that such a question cannot be determined by allegations in an ancillary bill, counsel for plaintiff cites Gableman v. Peoria Electric Railway Company, 179 U. S. 335, 21 Sup. Ct. 171, 45 L. Ed. 220, in which Mr. Chief Justice Fuller said:

"We have repeatedly held that the jurisdiction of such proceedings is dependent upon that of the main case. Rouse v. Letcher, 156 U. S. 49 [15 Sup. Ct. 266, 39 L. Ed. 341]; Gregory v. Van E, 160 U. S. 643 [16 Sup. Ct. 431, 40 L. Ed. 566]; Carey v. Railroad Co., 161 U. S. 115 [16 Sup. Ct. 537, 40 L. Ed. 638]."

While these latter cases more directly involve the appellate jurisdiction of the Supreme Court, nevertheless they are cited and followed in the Gableman Case, supra, which was a case directly bearing upon the question of the removability of an action against a receiver. But, independently of this consideration, I cannot agree that the language of the bill of complaint and the order appointing these receivers in the Circuit Court of this district has the effect of raising a federal question. What is there said might be readily applied to any interstate carrier, which as one of the incidents of its opera-

tion carries the mails of the United States. It is conceded that under any ordinary circumstances the receivers of such a railroad may be sued in the courts of the state in their representative capacity for personal injuries arising from the operation of the road under their management, and such action and the judgment that may ensue do not of necessity stop or cripple the operation of said line of railway nor deprive the public of the use thereof. Neither will they prevent the railroad from discharging its duties as a common carrier and in the transportation of the mails; nor interfere with interstate commerce and render the company unable to perform its public duties; nor inflict serious and irreparable injury upon the trade and commerce between the various states. If plaintiff has been damaged by the operation of this railroad under the receivership, he has the right to sue in any court which the law holds open to him. The judgment of that court is but the adjudication of his claim against the railroad. The objects aimed at by the bill of complaint and by the order of the court thereunder are in no wise interfered with by such litigation, because the act permitting such receiver to be sued in the courts of the state expressly says "such suits shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed so far as the same may be necessary to the ends of justice," and concerning this the Supreme Court in Gableman v. Peoria Electric Railway Co., supra, said:

"Of course, it devolves on the court in possession of the property or funds out of which judgments against its receiver must be paid to adjust the equities between all parties, and to determine the time and manner of payment of judgment creditors necessarily applying for satisfaction from assets so held to the court that holds them."

The integrity of the railroad and its ability to perform its functions as an interstate common carrier may thus be preserved and protected by the court in which the receivers are appointed as fully and as effectually as lies within the power of a court of equity. It is no doubt true that this action might have been brought in the court by which the receivers were appointed, but this does not militate against the competency of other jurisdictions.

Concerning the suggestion that such a suit might also deprive the public of the use of the line of railway and interfere with its convenience and with the carrying of the mails, the Circuit Court of Appeals for the Seventh Circuit in the case of Central Trust Co. v. Grantham et al., 83 Fed. 540, 27 C. C. A. 570, well said:

"It is urged that since the railroad is now in operation across the land in controversy, and since it is a public highway for interstate commerce, and is also a national mail route, the case should be litigated in the Circuit Court of the United States. If the United States or the Attorney General were party complainant, this point might well be considered. But the appellant here is a mere mortgagee. It is a creditor with a mortgage, striving in its own right as creditor to prevent waste of, or injury to, the mortgaged property. It is not the custodian of public rights. It does not, nor is it authorized to, sue on behalf of the public."

This language applies with equal force to the case at bar.

It would also seem that the criticism urged, that the allegations of the petition for removal as to a federal question being involved are not sufficient to support the jurisdiction of this court on that ground, is not without merit. The only allegation to that effect to be found in the petition for removal is this: "This case is one arising under the laws of the United States." . . .

In Butler v. Shafer et al. (C. C.) 67 Fed. 161, Judge Gilbert said:

> "In order that the court may have jurisdiction, it is essential, not that the complainant shall state that a federal question exists, or that it will become necessary to construe a law of the United States, but that he shall state facts from which the court may see that such a question will be presented. In Water Co. v. Keyes, 96 U. S. 199 [24 L. Ed. 656], it was held that there was no federal question 'simply because, in the progress of the litigation, it may become necessary to construe the Constitution or the laws of the United States.' The decision of the case must depend upon that construction. The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved."

In the case before us, the federal rights and interests involved, if any, are incidental and collateral, and not in any sense litigated questions.

In Gibbs v. Crandall, 120 U. S. 105, 7 Sup. Ct. 497, 30 L. Ed. 590, Mr. Chief Justice Waite said:

> "It is not enough for the party who seeks a removal of his cause to say that the suit is one arising under the Constitution. He must state the facts so as to enable the court to see whether the right he claims does really and substantially depend upon a construction of that instrument."

It follows from the views herein expressed that the plea to the jurisdiction and motion to remand must be sustained.